

**William D. Burger, Jr.(SBN 234915)**
**Melissa J. Perez (SBN 223776)**
**BURGER | MEYER** <sup>LLP</sup>
999 Corporate Drive, Suite 220
Ladera Ranch, CA 92694
Telephone:  (949) 427-1888
Facsimile:   (949) 427-1889
Email: wburger@burgermeyer.com
           mperez@burgermeyer.com

Attorneys for Plaintiff
HDI GLOBAL SPECIALTY SE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| HDI GLOBAL SPECIALTY SE<br><br>Plaintiff,<br><br>v.<br><br>VELOCITY FUNDRAISING RESOURCES, INC.; BRIAN HICKMAN; GREGORY HANSON; BRUCE RESNICK; and DAVID STRAUSS.<br><br>Defendants. | Case No.:<br><br><br><br>**COMPLAINT FOR DECLARATORY AND MONEY JUDGMENT** |
|---|---|

1
HDI GLOBAL SPECIALTY SE'S COMPLAINT

Plaintiff HDI Global Specialty SE ("HGS" or "Plaintiff") brings its Complaint for Declaratory and Money Judgment against Velocity Fundraising Resources, Inc. ("Velocity") and Individual Defendants Gregory Hanson, Brian Hickman, Bruce Resnick and David Strauss (collectively "Defendants") pursuant to 28 U.S.C. § 1332(a), and in support thereof states as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage dispute. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, HGS seeks a declaration of the rights and obligations of the parties under Commercial General Liability Policy No. 18LB3341 (the "Policy") issued to Velocity for the August 2, 2021 to August 2, 2022 policy period. (A true and correct redacted copy of the HGS Policy is attached as Exhibit A and incorporated herein). Specifically, HGS seeks a determination that it has no obligation to defend or indemnify Velocity or the Defendants with respect to the Underlying Litigation, discussed *infra*.

2. Velocity is a Southern California-based school fundraising company, with an online fundraising platform. It rewards students' fundraising efforts in day-long obstacle course events organized and marketed by Velocity as "Step It Up!". Velocity obtained the Policy to insure it for liability resulting from: "Fundraising events at various schools throughout Southern California."

3. Velocity sought to expand "Step It Up!" into other states, including Colorado and Arizona. After entering into contracts and interrelated business ventures to facilitate such expansion, Velocity became embroiled in contractual disputes with its joint venture business partners. Velocity initiated arbitration proceedings, counterclaims were filed, and a Colorado State Court Complaint was filed against Velocity and the Individual Defendants named herein. Attached hereto as Exhibits B through D, respectively, are true and correct copies of Velocity's AAA Demand for Arbitration entitled, *Velocity Fundraising Resources, Inc., et al. v. Kaplan, et al.*, Case No. 01-22-0000-5926 (the "Arbitration Demand"), the Counterclaims filed in the

Arbitration Proceeding, and the First Amended Complaint ("FAC") filed in Colorado State Court entitled, *Punctuated Equilibrium, Inc., et al. v. Velocity Fundraising Resources, Inc., et al.*, District Court, City and County of Boulder, Case No. 2022CV030116 (the "Colorado State Court Action") (these legal proceedings are collectively referred to as the "Underlying Litigation").

4. On June 2, 2022, HGS received notice of the Underlying Litigation, which Defendants tendered for defense and indemnification under the Policy.

5. On September 15, 2022, HGS accepted the defense of the Underlying Litigation under Coverage B's Personal and Advertising Injury Insuring Agreement, subject to a reservation of rights, including the right to withdraw from the defense and to seek reimbursement of all amounts paid by HGS should it be determined that coverage is not available under the Policy for the Underlying Litigation.

6. An actual, ripe, and justiciable controversy has arisen between the parties regarding their respective rights and obligations under the Policy in connection with the Underlying Litigation.

7. HGS seeks a declaration here that it has no duty to defend or indemnify Velocity or any of the Defendants in the Underlying Litigation, since that litigation does not, in any way, seek damages for "personal and advertising injury" arising out of Velocity's "[f]undraising events at various schools throughout Southern California" as required by the Policy.

8. Even if the Policy's Insuring Agreement could, somehow, be triggered, the Policy's Exclusions preclude coverage for the Underlying Litigation in its entirety.

9. HGS seeks a declaration that it has no duty to defend or indemnify Velocity or any of the Defendants in connection with the Underlying Litigation. HGS also seeks a money judgment reimbursing any and all amounts paid toward that defense through to the date judgment is entered in its favor.

## PARTIES

10. HGS is a foreign insurance company with its headquarters and principal place of business in Hanover, Germany. HGS is authorized to conduct business in the State of California.

11. Upon information and belief, Velocity Fundraising Resources, Inc. is a California Corporation, whose registered office is located at 3712 Cerritos Ave., Los Alamitos, CA 90720.

12. Upon information and belief, Gregory Hanson is an individual, who resides in San Diego County, California.

13. Upon information and belief, Brian Hickman is an individual, who resides in Los Angeles County, California.

14. Upon information and belief, Bruce Resnick is an individual, who resides in Los Angeles County, California.

15. Upon information and belief, David Strauss is an individual, who resides in Orange County, California.

## JURISDICTION AND VENUE

16. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, HGS seeks a declaration of the rights and obligations of the parties under the Policy. Specifically, HGS seeks a determination that it has no obligation to defend or indemnify Velocity or any of the Defendants with respect to the Underlying Litigation, as well as a money judgment reimbursing it for any and all amounts paid toward that defense.

17. This action is ripe for adjudication and by reason of the allegations herein, a real, immediate and justiciable controversy exists between the parties and will continue to exist between the parties until such time as it is resolved by this Court.

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. Venue is proper pursuant to 28 U.S.C. § 1391.

20. <u>Intra-District Assignment</u>: This action is properly assigned to the Orange County Division. Velocity has its principal place of business in Orange County, and the Policy was issued to Velocity in Orange County.

## FACTUAL ALLEGATIONS

### A. <u>Velocity Expands</u>

21. As indicated, *supra*, Velocity is a Southern California-based school fundraising company, with an online fundraising platform. It rewards students' fundraising efforts in day-long obstacle course events organized and marketed by Velocity as "Step It Up!".

22. Upon information and belief, Velocity's owners are Greg Hanson, Brian Hickman, Bruce Resnick and Dave Strauss (collectively "the Owners").

23. In or about 2018, Velocity sought to expand Velocity's fundraising programs beyond Southern California, collaborating with Benjamin Kaplan.

24. Velocity and Punctuated Equilibrium, Inc. ("PEI") (a company formed by Kaplan) created a joint venture, Power of Purpose (POP!), LLC ("POP"), whose primary role was to expand Velocity's online fundraising business into additional states across the country.

25. Kaplan was POP's CEO.

26. Velocity's Owners sit on POP's Board of Managers.

27. Another company affiliated with Kaplan, Community Philanthropic Ventures, LLC ("CPV"), was formed to facilitate Velocity's collaboration with Kaplan.

28. Numerous agreements between and/or among Velocity, POP, PEI, CPV and Kaplan memorialize their efforts, and form the gravamen of the disputes between these parties, including:

    a. License and Collaboration Agreement ("Collaboration Agreement") and Amended and Restated License and

Collaboration Agreement ("Amended Collaboration Agreement") between Velocity, POP and CPV;

b. POP Operating Agreement ("Initial POP OA") and Amended and Restated Operating Agreement ("Amended POP OA");

c. Executive Services Agreement ("ESA") between POP and PEI;

d. Termination and Settlement Agreement ("TSA") between Velocity, POP and PEI; and

e. Arizona Agreement.

29. Velocity, POP and CPV signed the Collaboration Agreements whereby Velocity agreed to license its intellectual property to CPV to expand the "Program" into the "Expansion Territory" as defined in the Initial and Amended Collaboration Agreements; the Expansion Territory excludes Southern California. (*See* Exhibit B, Arbitration Demand, Ex. A, pp 31-32 (Collaboration Agreement) and Ex. B, pp. 66-68 (Amended Collaboration Agreement) attached thereto).

### B. The Underlying Litigation

#### 1. AAA Arbitration

30. In or about Spring 2021, Velocity claimed it had evidence CPV and Kaplan (while serving as POP's principal and executive agent) surreptitiously embarked on a campaign to steal Velocity's trade dress and intellectual property to develop "Book Blast", a rival product in the school fundraising space.

31. On or about February 9, 2022, Velocity and POP filed the Arbitration Demand allegedly to remedy material breaches of contractual and fiduciary duties owed under agreements governing the use of Velocity's intellectual property. Specifically, they allege that CPV's and Kaplan's "Book Blast" product infringed on "Step it Up!'s" trade dress and violated Kaplan's contractual and common law fiduciary duties to Velocity and POP. (*See* Exhibit B.)

32. On or about July 15, 2022, CPV filed First Amended Counterclaims in response to the Arbitration Demand (the "Counterclaims") alleging CPV fulfilled its

obligations under the various contractual agreements between and among the parties, including expanding its sales force nationwide to market, sell, and manage the Program and Events in the Expansion Territory. (*See* Exhibit C).

33. The Counterclaims assert Velocity stopped supporting the CPV sales team, that the Owners falsely accused Kaplan and CPV of wrongdoing, and that Velocity and POP materially breached (and effectively terminated) the Amended Collaboration Agreement.

34. Allegedly, the Owners falsely accused Kaplan and CPV of wrongdoing with respect to the Book Blast product in email blasts and in company-wide Zoom calls that took place in or about May 2021. (*See* Exhibit C, paragraphs 40-43 specifically referencing a May 23, 2021 email and the May 24, 2021 company-wide Zoom call.

35. The Counterclaims seek to recover economic loss solely for breach of contract, including declaratory relief that the Amended Collaboration Agreement was terminated, as well as attorneys' fees.

**2. Colorado State Action**

36. On or about February 23, 2022, PEI and Ben Kaplan filed the Colorado State Court Action alleging breach of contract, seeking to recover money allegedly owed along with an accounting of distributions to POP members.

37. On or about May 10, 2022, a First Amended Complaint (the "FAC") was filed in the Colorado State Court Action also naming the Owners. (*See* Exhibit D.)

38. The FAC includes causes of action for:

(1) Breach of Contract (Kaplan v. Velocity – Arizona Agreement);

(2) Unjust Enrichment (Kaplan v. Velocity – Arizona Agreement);

(3) Breach of Contract (PEI v. Velocity – Termination and Settlement Agreement);

(4) Unjust Enrichment (PEI v. Velocity – Termination and Settlement Agreement);

(5) Breach of Contract (PEI v. POP – Initial POP OA and Amended POP OA);

(6) Breach of Fiduciary Duties – Duty of Loyalty (PEI v. Velocity Owners – Initial POP OA and Amended POP OA);

(7) Breach of Fiduciary Duties – Duty of Care (PEI v. Velocity Owners – Initial POP OA and Amended POP OA);

(8) Negligent Misrepresentation (PEI v. Velocity Owners);

(9) Conversion (PEI v. Velocity and Velocity Owners);

(10) Civil Theft (PEI v. Velocity and Velocity Owners);

(11) Civil Conspiracy (PEI and Kaplan v. Velocity Owners); and

(12) Intentional Interference with a Contract (PEI and Kaplan v. Velocity and Velocity Owners).

39. The FAC seeks: (1) a full and accurate accounting of POP; (2) a full and accurate accounting of the revenue collected by Velocity in the State of Arizona under the Arizona Agreement and an award of all monies owed; (3) judgment and an award of compensatory damages resulting from breach of contracts and torts as alleged against Defendants; (4) an award of attorneys' fees and interest as allowed by agreement and by law; (5) piercing the corporate veil of Defendants of Velocity and POP and imposing liability for such damages on their owners, as companies and individuals, jointly and severally.

C. **The Policy**

40. HGS issued Commercial General Liability Policy No. 18LB3341 to Velocity for the policy period August 2, 2021 to August 2, 2022. (*See* Exhibit A.)

41. The Policy has a $1 million "personal and advertising injury" limit of liability any one Person or Organization, and a $2 million general aggregate limit. Words in quotes are defined terms in the Policy.

42. The Policy states: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or

organization qualifying as a Named Insured under this policy. . . . The words 'we,' 'us' and 'our' refer to [HGS]." (Exhibit A, Commercial General Liability Coverage Part, p. 1).

43. The Policy defines the word "insured" to mean "any person or organization qualifying as such under Section II – Who Is An Insured." (*Id.*)

44. Pursuant to Section II.1.d. of the Policy, Velocity's "'executive officers' and directors are insureds, <u>but only with respect to their duties as your officers or directors</u>. [Velocity's] stockholders are also insureds, <u>but only with respect to their liability as stockholders</u>." (Exhibit A, underlined emphasis added.)

45. The Insuring Agreement for Coverage B, Personal and Advertising Injury Liability, states:

> a. [HGS] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
>
> . . .
>
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(*Id.*)

46. Section V.14 of the Policy, defines "personal and advertising injury" as

injury, to include consequential "bodily injury", arising out of one or more of the following offenses:

. . .

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

. . . .

(*Id.*)

47. The Limitation of Coverage to Designated Premises or Project Endorsement (CG 21 44 07 98) (the "Designated Project Endorsement") specifically limits coverage for "personal and advertising injury" arising out of fundraising events <u>solely in Southern California</u>. It states (underlined emphasis added):

> This insurance applies <u>only to</u> "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; <u>or</u>
> 2. <u>The project shown in the Schedule.</u>

(*Id.*) The Designated Project in the Schedule is "Fundraising events at various schools <u>throughout Southern California</u>. Some events include inflatable attractions." (*Id.*, underlined emphasis added.)

48. The Policy contains numerous exclusions for Coverage B, Personal and Advertising Injury. Specifically, the Policy states:

> **2.   Exclusions**
> This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

…

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

(*Id.*)

49. Section IV.2.a. of the Policy requires HGS be "notified as soon as practicable of an 'occurrence' or offense which may result in a claim." Section IV.2.b. requires that HGS "receive written notice of the claim or 'suit' as soon as practicable." (*Id.*)

## Count I
### (The Underlying Litigation Does Not Allege "Personal and Advertising Injury" Arising Out of "Fundraising Events at Various Schools Throughout Southern California")

50. HGS repeats and incorporates by reference paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. As discussed *supra*, the Policy here specifically limits coverage to "personal and advertising injury" arising out of "[f]undraising events at various schools throughout Southern California." The Underlying Litigation does not seek damages for "personal and advertising injury" arising out of fundraising events at schools throughout Southern California.

52. The Policy's Coverage B Insuring Agreement, therefore, is not and cannot be potentially triggered.

53. HGS is not obligated to defend or indemnify Velocity or any of the other Defendants in the Underlying Litigation.

## Count II
### (The Material Published Prior to Policy Period Exclusion (the "Prior Publication Exclusion") Applies)

54. HGS repeats and incorporates by reference paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. Allegations of false statements regarding the origins of CPV's and Kaplan's Book Blast program do not give rise to potential "personal and advertising injury" coverage under Coverage B.

56. The Prior Publication Exclusion contained in Section I.B2.c. of the Policy bars coverage for "'personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period."

57. The alleged false statements were made in or about May 2021, prior to the beginning of the policy period (August 2, 2021), and trigger the Policy's Prior Publication Exclusion, barring coverage in its entirety for the Underlying Litigation.

## Count III

### (The Policy Does Not Cover Breach of Contract)

58. HGS repeats and incorporates by reference paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Section I.B.2.f. (the "Breach of Contract Exclusion") states the Policy does not apply to "personal and advertising injury" arising out of a breach of contract, "except an implied contract to use another's advertising idea in your 'advertisement'."

60. No allegations trigger the exception to the Breach of Contract Exclusion. Rather, all of the claims and relief sought in the Underlying Litigation arise out of the parties' respective contractual disputes and their alleged breaches of numerous contractual agreements. Therefore, the Breach of Contract Exclusion bars coverage in its entirety for the Underlying Litigation.

## Count IV

### (The Policy Does Not Cover the Owners in a Non-Insured Capacity)

61. HGS repeats and incorporates by reference paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. The Policy's Coverage B Insuring Agreement states:

> [HGS] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(*See* Exhibit A, Section I, Coverage B, Section 1.a.)

63. Consistent with the foregoing, Section II.1.d. of the Policy states, if the Named Insured (Velocity) is designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, "[Velocity's] 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders." Pursuant to Section V.6. of the Policy, "executive officer" means "a person holding any of the officer positions created by Velocity's charter, constitution, by-laws or any other similar governing document." (*Id.*, Section V.6.)

64. The Colorado State Action FAC alleges, among other things, that the Owners breached fiduciary duties of care and loyalty owed as POP's Board of Managers.

65. These allegations are not directed against Velocity or the Owners in their capacity as Velocity's "executive officers" or directors. As a result, the Policy does not apply and coverage is not available.

### Count V
**(HGS is Entitled to Declaratory Relief and Money Judgment for Reimbursement of Amounts Paid to Defend the Underlying Litigation)**

66. HGS repeats and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. HGS agreed to pay defense fees and costs incurred by the Defendants in the Underlying Litigation, subject to a reservation of the right to seek reimbursement of such amounts.

68. Should this Court declare HGS is not obligated to defend or indemnify Velocity or the Owners in the Underlying Litigation, then any amounts paid by HGS toward their defense constitutes unjust enrichment to which the Defendants are not entitled and HGS is entitled to recoup those amounts.

69. Accordingly, HGS requests a declaration that it is not obligated to defend or indemnify Velocity or the Owners in the Underlying Litigation and that Defendants

must reimburse HGS for any amounts paid toward the defense of the Underlying Litigation, including entering a money judgment for that amount.

WHEREFORE, HGS respectfully requests this Court enter judgment in its favor and against the Defendants declaring that HGS has no duty to defend or indemnify the Underlying Litigation because:

A. The Underlying Litigation does not allege a potentially covered "personal and advertising injury" arising out of "[f]undraising events at various schools throughout Southern California," and therefore, the Insuring Agreement is not triggered;

B. The Policy's Prior Publication Exclusion bars coverage for the Underlying Litigation since the alleged false statements were published prior to the inception of the Policy;

C. The Policy's Breach of Contract Exclusion bars coverage for the Underlying Litigation since is arises out of a breach of contract; and

D. The Policy does not provide coverage for the Defendants in a non-insured capacity, thereby barring coverage for the Underlying Litigation.

HGS further requests entry of an order declaring it is entitled to reimbursement of any and all amounts it paid toward the defense of the Underlying Litigation and a money judgment against the Defendants for that amount, as well as entry of an order awarding costs and any other relief to which this Court deems fair and just.

Dated: October 20, 2022

**BURGER | MEYER** LLP

*/s/ Melissa J. Perez*

William D. Burger, Jr.
Melissa J. Perez
Attorneys for Plaintiff
HDI GLOBAL SPECIALTY SE